Dorothy M. Weber, Esq. (DW 4734)
Kyle D.N. Fogden, Esq. (KF 3043)
SHUKAT ARROW HAFER WEBER
  & HERBSMAN, L.L.P.
111 West 57th Street, Suite 1120
New York, NY 10019
Attorneys for Plaintiff PATTONIUM, INC.

RECEIVED JUL 0 3 2007 U.S.D.C. S.D.N.Y. CASHIERS

JUDGE CASTEL

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

PATTONIUM, INC.

                Plaintiff,

-against-

J & D ASSOCIATES, LLC,
NORTH AMERICAN CONCERTS, CORP.

                Defendants.

------------------------------------------------------------X

**07 CIV 6204**

07 CIV ___ (___)

**COMPLAINT**

Plaintiff, Pattonium, Inc., by its attorneys, Shukat Arrow Hafer Weber & Herbsman, LLP, alleges for its complaint, upon knowledge and belief as to its own acts and upon information and belief as to the acts of all others, as follows:

## THE PARTIES, JURISDICTION AND VENUE

1.     Plaintiff Pattonium, Inc. (hereinafter, "Pattonium") is a corporation incorporated under the laws of the State of Pennsylvania with its principal place of business at 1212 Grenox Road, Wynnewood, Pennsylvania 19096. Plaintiff furnishes the musical performing services of the soul and R&B singer, Patricia Edwards, professionally known as Patti LaBelle (hereinafter, "LaBelle").

2. On information and belief, Defendant J & D Associates, LLC ("J&D") is a limited liability company formed under the laws of the State of Michigan with its principal place of business at 34561 Fontana Drive, Sterling Heights, Michigan 48312.

3. On information and belief, North American Concerts, Corp. (hereinafter, "North American Concerts") is a corporation incorporated under the laws of the State of Florida with its principal place of business at 10816 Belmont Drive, New Port Richey, Florida 34654.

4. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(a).

5. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(a).

## BACKGROUND FACTS

6. Pursuant to an agreement (hereinafter, the "Joint Venture Agreement") dated June 25, 2005 between J&D and North American Concerts (hereinafter collectively, the "Defendants"), the Defendants entered into a joint venture to, *inter alia*, produce a concert featuring the live performance of LaBelle on August 13, 2005 at Chene Park Outdoor Theater in Detroit, Michigan (the "Concert"). A copy of the Joint Venture Agreement is annexed hereto as Exhibit A.

7. Pursuant to an agreement (hereinafter, the "Concert Agreement") between Pattonium and North American Concerts, the Defendants engaged

2

Pattonium to furnish the performing services of LaBelle for the Concert. A copy of the Concert Agreement is annexed hereto as Exhibit B.

8. Paragraph 15(A) of the Concert Agreement states as follows:

> This agreement has been entered into in the State of New York, and the validity, interpretation and legal effect of this agreement shall be governed by the laws of the State of New York applicable to contracts entered into therein. The New York courts (State and Federal) will have jurisdiction of any controversies regarding this agreement; any action or other proceeding which involves such a controversy will be brought in those courts in New York County and not elsewhere.

9. As consideration for the performance of LaBelle, the Defendants were obligated to pay Pattonium the sum of One Hundred Thousand ($100,000.00) United States Dollars (the "Fee"), plus roundtrip air transportation, ground transportation, hotel rooms and meals for seventeen (17) individuals.

10. Pursuant to paragraph 4(B) of the Concert Agreement, a deposit in the amount of Fifty Thousand ($50,000.00) United States Dollars (the "Deposit") was due by wire transfer to Pattonium's account at JP Morgan Chase Bank, New York, New York, upon the execution of the Concert Agreement. Pursuant to paragraph 4(C) of the Concert Agreement, the balance of the Fee was due to Pattonium immediately prior to LaBelle's performance, in cash or by certified check.

11. Paragraph 4(D) of the Concert Agreement states as follows:

> In the event that PURCHASER refuses or neglects to make the aforementioned payments, PRODUCER has the right to cause Artist not to perform in accordance with paragraph 2 without waiving any of PRODUCER'S rights herein.

12. On or about June 24, 2005, Mr. Edward Morelli, the principal of North American Concerts, requested that Pattonium agree to the payment of the Deposit in two installments: $25,000 by June 28, 2005, and $25,000 by July 13, 2005. On or about June 28, 2005, Pattonium agreed to Mr. Morelli's request.

13. On or about July 6, 2005, the first installment of the Deposit was sent by wire transfer to Pattonium's account from "J & D Associates LLC, In care of North American Concerts".

14. On or about July 27, 2005, Mr. Morelli sent an email to Pattonium's attorney, Jonas Herbsman of Shukat Arrow Hafer Weber & Herbsman, LLP, to advise that the Concert was cancelled due to problems with the venue.

15. Following Mr. Morelli's email, Mr. Herbsman was contacted by Mr. Johnnie Washington of J&D, who advised that J&D was North American's partner with respect to the Concert. A copy of the Joint Venture Agreement was furnished to Mr. Herbsman as evidence of the Defendants' partnership.

16. Mr. Washington requested the opportunity to reschedule the Concert for an alternate date at the Fox Theater in Detroit, Michigan, with the first installment of the Deposit to be applied to the new date. Despite having no obligation to do so, Pattonium agreed to Mr. Washington's request, upon the condition that J&D enter into a new agreement with Pattonium for the Fox Theater date.

17. On or about August 15, 2005, Pattonium provided J&D with an agreement (hereinafter, the "Fox Theater Agreement") for the new date, which was

required to be executed and returned to Pattonium by August 25, 2005. Under the Fox Theater Agreement, J&D was required to pay the $25,000 balance of the Deposit to Pattonium on or before August 19, 2005.

18. J&D failed to both pay the balance of the Deposit and return an executed copy of the Fox Theater Agreement by August 25, 2005, and has failed to pay any additional amounts to Pattonium since that date. As a result, Pattonium withdrew its offer to reschedule the Concert on an alternate date.

19. As a result of the Defendants' failure to the pay the full amount of the Deposit, and in accordance with the terms of the Concert Agreement, Pattonium was damaged in the amount of One Hundred Thousand ($100,000.00) United States Dollars, of which Twenty Five Thousand ($25,000.00) United States Dollars has previously been received from Defendants, pursuant to the Concert Agreement.

**AS AND FOR A
FIRST CAUSE OF ACTION**
**(Breach of Contract)**

20. The Plaintiff repeats and realleges each and every allegation of paragraphs "1" through "19" as if fully set forth herein.

21. The Defendants' failure to pay the full amount of the Deposit constitutes a material breach of the Agreement.

22. As a result of the foregoing, Pattonium has been damaged in the amount of One Hundred Thousand ($100,000.00) United States Dollars, of which Twenty Five Thousand ($25,000.00) United States Dollars has previously been received from Defendants, plus interest, costs and attorneys' fees.

WHEREFORE, Plaintiff prays for relief as follows:

(a) That Plaintiff be granted judgment against the Defendants on the First Cause of Action in the amount of One Hundred Thousand ($100,000.00) United States Dollars, of which Twenty Five Thousand ($25,000.00) United States Dollars has previously been received from Defendants;

(b) for all costs, expenses and attorneys fees incurred herein; and

(c) for all such other relief that the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a jury trial.

Dated: New York, New York
July 3, 2007

SHUKAT ARROW HAFER WEBER
& HERBSMAN, LLP

By: _____
Dorothy M. Weber (DW 4734)
Kyle D.N. Fogden, Esq. (KF 3043)
Attorneys for the Plaintiff, Pattonium, Inc.
111 West 57th Street, Suite 1120
New York, New York 10019
(212) 245-4580

# EXHIBIT A

# J&D Associates, LLC
# And
## North American Concerts
## AGREEMENT

This Agreement is made on June 25, 2005 between Johnnie Washington and David Underwood known as (J&D Associates, LLC) and Eddie Morelli known as (North American Concerts). This agreement is for the production of entertainment events known as concerts. This agreement is entered into for the purpose of co-producing the following two concerts.

1. Saturday, August 13, 2005 - Patti Labelle (Headliner) and opening act TBD at Chene Park

2. Friday, August 26, 2005 - Chaka Kahn (Headliner) and opening act TBD at Chene Park

Our agreement reads as follows:

J&D Associates, LLC will invest $50,000.00 dollars in order to receive 30% of the profits for both concert dates listed above. J&D Associates, LLC agrees to invest the $50,000.00 dollars as follows. An initial $35,000.00 dollar investment will be made to cover the artist deposits and concert promotions. The $25,000.00 artist deposit is due no later than June 27, 2005 by 3:00pm. The promotion campaign will be handled by J&D Associates, LLC with input and support from North American Concerts and their team. J&D Associates, LLC will invest the $10,000.00 into the promotion campaign costs with any additional costs to be paid/handled by North American Concerts. This total of $35,000.00 covers J&D Associates, LLC initial investment. The balance of $15,000.00 is due no later than July 23, 2005 to help cover costs for the second show featuring Chaka Kahn August 26, 2005. If for any reason the balance of $15,000.00 is not paid by 7/23/05, J&D Associates, LLC will forfeit their partnership in the second show, and will receive only 25% of the first show profits featuring Patti Labelle. In this case the initial investment by J&D Associates of $35,000.00 will represent its investment in the first show featuring Patti Labelle.

North American Concerts and J&D Associates, LLC agree to the following definitions.

Profits - financial gain after all business expenses have been met.

Expenses - charges/costs incurred in order to produce the above two concerts in their entirety. This includes the initial investments of both J&D Associates, LLC and North American Concerts, artists costs, venue costs, promotions, sponsorship commissions, sound, stage, lights, etc.

Sponsorships - a business realtionship between the concert events and another outside company that pays funds to said event for the purpose of receiving advertisement and publicity for its involvement with the events. Sponsorship commissions will be paid to seller at 20%. Suggested sponsorship levels are listed below.

   Title Sponsor - $15,000.00, Presenting Sponsor - $10,000, Gold Sponsor - $5,000.00, Ambassador Sponsor - $2,500

This agreement requires that both parties be in agreement on the expenses to be incurred for the production of both shows. This will allow us to determine the breakeven and cost of show production, thus allowing for profits to be calculated. No party shall have the right to incur expenses for the costs of the show (with the exception of artist costs including riders) without the consent of the other party. This can be satisfied by both parties communicating on costs before they are incurred and getting agreement for expenses more than $ _1,500.00_, the radio promotion buy is an example of the type of costs requiring both parties agreement. North American Concerts will have the final decision on matters of the production of the two concert shows.

The accounting for ticket sales, sponsorship sales, and expenses require proper tracking with copies of receipts, invoices, contracts, etc. being supplied to both parties. A format for the Income Statement will be agreed upon and shared on a weekly basis leading into the final week when reporting shall be done on a daily basis. The form of communication to relay event details can be by fax, email, phone, etc.

The final settlement for each show is as follows:

   Patti LaBelle - Settlement due no later than August 22, 2005 or within 24 hrs. following ticketmasters release of money to Rights Production.

   Chaka Kahn - Settlement due no later than September 5, 2005 or within 24 hrs. following ticketmasters release of money to Rights Production.

The final settlement will include the initial investment by both parties and distribution of profits based on a 30%/70% split with 30% of profits for J&D Associates, LLC and 70% of profits for North American Concerts. Final settlement shall involve both parties to the extent that both parties are present and either separate checks for final settlement are cut from Right Productions to each party or one check is cut from Right Productions that require each party to sign.

In the event that either show does not happen the investments for said show shall be returned in its entirety to both parties, with the exception of costs incurred that can't be recouped. This agreement shall be binding on and imure to the benefit of the two parties identified as the agreeing parties and their heirs in case of death or incapitation of either party. This agreement is binding on both parties once signed and neither party can break the agreement without written consent from the other party. Any unlawful and unethical actions by either party that causes a negative financial impact to this agreement, said party that caused the negative impact shall hold harmless and

make whole the other party.

IN WITNESS WHEREOF, the parties have executed this Agreement effective the date first stated above.

By: _____   By: _____
      J&D Associates, LLC                     North American Concerts

Received $1,500.00 from J+D Associates Leaving Balance of $33,500.00 signed

x_____ 6/25/05
North American Concerts

# EXHIBIT B

This Agreement dated _____, 2005 by and between PATTONIUM, INC., P.O. Box 506, Wynnewood, Pennsylvania 19096 (herein called "PRODUCER") and North American Concerts, _____ ("Purchaser").

1. This agreement is for the personal services of the performer professionally known as PATTI LABELLE (the "Artist") whose services shall be furnished by PRODUCER to perform services in accordance with the provisions of this agreement.

2. The details of the performance(s) are:

    A. Date:     August 13, 2005

    B. Venue:     Chene Park Outdoor Theater, Detroit, Michigan

    C. Time:     ____ p.m.

    D. Duration of Performance: Sixty (60) minutes.

3. Type of Engagement: Concert.

4. Compensation agreed upon:

    A.     The total price is One Hundred Thousand ($100,000) Dollars plus airfare, hotel and ground transportation as set forth herein.

    B.     PRODUCER shall pay Fifty Thousand ($50,000) Dollars upon execution hereof as follows:

        Bank:     JP Morgan Chase Bank
                      1166 Avenue of the Americas
                      New York, NY 10036

        ABA:     021-000-021

        Account:     Pattonium Inc
        Account #:     020930356
                      c/o RZO
                      250 West 57th Street
                      New York, NY 10107

    C.    The balance of the fee shall be paid in cash or by certified check prior to the performance on the date of performance.

    D.    In the event that the PURCHASER refuses or neglects to make the aforementioned payments, PRODUCER has the right to cause Artist not to perform in accordance with paragraph 2 without waiving any of PRODUCER'S rights herein.

    E.    In case of cancellation at PURCHASER'S request, the full fee will be due and owing to PRODUCER and any deposit shall be deemed forfeited.

## 5. RIDER

The rider attached hereto is an addendum to this agreement and an integral part of this agreement. PURCHASER shall abide by all of the terms and conditions of the rider.

## 6. RETURN OF CONTRACT

    A.    If this agreement is not signed and returned to PRODUCER within ten (10) days from receipt, PRODUCER reserves the right to declare this agreement null and void and will be free to make other arrangements on the above date(s) of performance. If for any reason PURCHASER cannot return this agreement within this time period, it is PURCHASER'S responsibility to so inform PRODUCER immediately in writing.

    B.    This agreement has been issued based on PURCHASER'S confirmation of the aforementioned Artist performance on the date and in the city noted herein.

## 7. TRANSPORTATION

    A.    The PURCHASER agrees to provide, at no cost to PRODUCER in accordance with paragraph 4A above, all local ground transportation for Artist, crew and baggage from the point of arrival at airport to hotel, to local events, to venue, to hotel, to point of departure from airport. Sufficient vehicles and drivers must be provided for such transportation. Super-stretch limousine to be provided for Artist.

    B.    The PURCHASER agrees to provide, at no cost to PRODUCER in accordance with paragraph 4A above, roundtrip air transportation for seventeen (17) individuals, consisting of first class tickets for Artist and one (1) additional individual and fifteen (15) coach class tickets, from and to such cities as PRODUCER shall designate.

## 8. HOTEL ACCOMODATIONS

    A.    PURCHASER agrees to provide, at no cost to PRODUCER, accommodations consisting of: (i) a two (2) bedroom suite at a five (5) star hotel for Artist, (ii) a one (1) bedroom suite at the same and (iii) fifteen (15) king-bedded rooms at the Two Trees Hotel.

    B.    PURCHASER shall provide meals for the Artist and entourage.

9. FACILITIES

    A.    Artist and crew must have access to the venue on date of performance throughout the day. PRODUCER shall provide a suitable dressing room for Artist with private bathroom with shower and aseparate dressing rooms for Artist's band.

    B.    PURCHASER agrees to provide a first class public address system including, but not limited to, microphones, amplifiers, monitors and loudspeaker equipment, a first class lighting system including, but not limited to, dimmers, trusses, lamps and spotlights and backline. Additionally, PURCHASER shall furnish and pay for all engineers, electricians, stagehands, spotlight operators and all other employees required for the performance hereunder and for all and any rehearsals or sound checks as required or requested by PURCHASER. PRODUCER reserves the right not to cause Artist to perform if equipment provided by PURCHASER does not meet with Artist's specifications.

    C.    PURCHASER agrees to provide and pay for all house programs, security, ushers, tickets, ticket sellers, and all advertising.

10. PUBLICITY

    A.    PRODUCER will provide PURCHASER with available publicity photographs and biographical materials promptly upon execution hereof. All materials, photos, etc., shall be subject to PRODUCER's prior written approval before use.

    B.    All billing, credits and publicity shall comply with information and/or layouts provided by PRODUCER and no variations or deviations shall be permitted without written approval of PRODUCER.

    C.    Subject to A above, PURCHASER may use Artist's name, approved pictures, photographs and other life-likeness in connection with the advertising and publicizing of the engagement hereunder, but such use shall not in any way imply endorsement of any company, product or service other than the PURCHASER. Said advertising and publicity rights shall terminate upon completion of this engagement.

    D.    The Artist's performance may not be recorded, broadcast or exploited in any manner without the prior written approval of Artist, PRODUCER and Artist's record label. No permission is granted for any such recording, broadcast or exploitation and no guarantee is given that any such permission will subsequently be granted.

    E.    PRODUCER acknowledges that PURCHASER has created a marketing and promotion plan as set forth on Exhibit A hereto. PURCHASER agree that all aspects of such marketing and promotion, to the extent involving Artist's name and/or likeness, shall be subject to the terms of this agreement. Artist shall not be obligated to provide any additional services with respect to such marketing and promotion and PURCHASER shall not obligate Artist to attend any pre-performance or post-performance events or to participate in any meet and greets, interviews or other promotions or appearances unless Artist agrees in each instance in writing prior to such event.

### 11. INSURANCE

There must be insurance covering Artist's performance, including, but not limited to, liability insurance. PURCHASER is to provide PRODUCER at least one (1) week prior to the performance with a certificate of insurance evidencing:

    A.    Comprehensive general liability insurance in the amount required by the venue but in no event less than $1,000,000 combined single limit for bodily injury and property damage.

    B.    Said insurance coverage shall be in full force and effect at all times PRODUCER or its agents, employees or Artist are in the confines of the venue or its property. PRODUCER'S failure to require or review the insurance certificate shall not affect PRODUCER'S rights or PURCHASER'S obligations hereunder.

    C.    None of PRODUCER, its agents or employees or Artist shall be liable for damage or injury to any patrons or to the venue's property or personnel, any fixtures, or personal property, including as a result of the installation and/or operation of equipment provided by the PRODUCER except to the extent caused by the negligent acts or omissions of PRODUCER or Artist. PURCHASER shall indemnify and hold PRODUCER and Artist harmless from any third party claims concerning the foregoing and no claim, deduction or offset shall be made by PURCHASER in respect of same. PRODUCER and Artist shall indemnify and hold PURCHASER harmless from any third party claims arising from the negligent acts or omissions of PRODUCER or Artist.

### 12. CANCELLATION

d:/Pattonium/Chene Park                          4

    A.    PRODUCER or PURCHASER reserve the right to cancel this agreement without liability in the event of an Act of God (including inclement weather causing cancellation of an outdoor event), governmental restrictions, riots, strikes, national or international emergencies, in which case the deposit, less actual expenses already incurred by PRODUCER with respect to the engagement (i.e., travel, accommodation, etc.) will be refunded. Notwithstanding the foregoing, PRODUCER shall be paid in full provided Artist is at, or is enroute to, the engagement or otherwise ready, willing and able to perform.

    B.    In the case of late arrival of Artist due to circumstances beyond the control of the Artist or PRODUCER (e.g. weather, traffic delays, airline's fault, etc.), PURCHASER must use every resource to see that the concert takes place when Artist arrives in the city of engagement. The concert cannot be cancelled for the above reasons by PURCHASER without consent of PRODUCER. No deductions on the contract fee can be made if the concert takes place at time other than originally scheduled.

    C.    If for reasons beyond the control of the PRODUCER and other than the reasons listed in paragraphs A and B above, the Artist willfully chooses not to perform, PRODUCER'S liability is limited to the return of the fee deposited by PURCHASER. Said deposit shall not bear interest.

## 13. MISCELLANEOUS

    A.    PRODUCER will not be responsible for or pay any guild fees, music royalty charges, union dues or local taxes, and none shall be deducted from the agreed contract price. All or any charges, fees, dues or taxes will be borne solely by the PURCHASER.

    B.    Each party hereto is acting as an independent contractor and nothing herein contained shall be construed as creating a partnership, joint venture or other relationship between the parties. PURCHASER and PRODUCER shall be responsible for payment of their own applicable federal, state and local payroll and taxes and charges.

## 14. ASSIGNMENT AND MODIFICATION

    A.    The PURCHASER cannot assign or transfer this agreement without PRODUCER'S written consent.

    B.    This agreement may not be changed, modified or altered except by an instrument in writing signed by both parties.

## 15. DOMICILE

    A.    This agreement has been entered into in the State of New York, and the validity, interpretation and legal effect of this agreement shall be governed by the laws of the State of New York applicable to contracts entered into therein. The New York courts (State and Federal) will have jurisdiction of any controversies regarding this agreement; any action or other proceeding which involves such a controversy will be brought in those courts in New York County and not elsewhere.

B.  The invalidity or unenforceability of any provision of this agreement shall not affect the validity or enforceability of any other provision of this agreement.

IN WITNESS WHEREOF, the parties hereto have caused this agreement to be executed as of the date mentioned above.

PATTONIUM, INC.

By:_____

NORTH AMERICAN CONCERTS

By:_____
   Name:
   Title: