Dorothy M. Weber, Esq. (DW 4734)
Kyle D.N. Fogden, Esq. (KF 3043)
SHUKAT ARROW HAFER WEBER
 & HERBSMAN, L.L.P.
111 West 57th Street, Suite 1120
New York, NY 10019
Attorneys for Plaintiff PATTONIUM, INC.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
PATTONIUM, INC.                                    :          07 CIV 6204 (PKC)

                                                   :

            Plaintiff,                             :

     ·against·                                     :

                                                   :          **AMENDED**
                                                              **COMPLAINT**

J & D ASSOCIATES, LLC,                             :
NORTH AMERICAN CONCERTS, CORP.,
EDWARD MORELLI,                                    :
NORTH AMERICAN CONCERTS, INC.
                                                   :

            Defendants.                            

------------------------------------------------------------------X

     Plaintiff, Pattonium, Inc., by its attorneys, Shukat Arrow Hafer Weber &

Herbsman, LLP, alleges for its complaint, upon knowledge and belief as to its own

acts and upon information and belief as to the acts of all others, as follows:


                 THE PARTIES, JURISDICTION AND VENUE

     1.     Plaintiff Pattonium, Inc. (hereinafter, "Pattonium") is a corporation

incorporated under the laws of the State of Pennsylvania with its principal place of

business at 1212 Grenox Road, Wynnewood, Pennsylvania 19096. Plaintiff

furnishes the musical performing services of the soul and R&B singer, Patricia

Edwards, professionally known as Patti LaBelle (hereinafter, "LaBelle").

2.      On information and belief, Defendant J & D Associates, LLC ("J&D") is a limited liability company formed under the laws of the State of Michigan with its principal place of business at 34561 Fontana Drive, Sterling Heights, Michigan 48312.

3.      On information and belief, North American Concerts, Corp. is a corporation incorporated under the laws of the State of Florida with its principal place of business at 10816 Belmont Drive, New Port Richey, Florida 34654.

4.      On information and belief, North American Concerts, Inc. is a corporation incorporated under the laws of the State of Florida with its principal address at 7212 U.S. Highway 19, Suite #3, New Port Richey, Florida 34652. Subsequent to entering into the joint venture with J&D and being a signatory to the Venue Agreement more fully described in paragraph "10" hereinbelow, this entity has been marked inactive by the Florida Secretary of State.

5.      On information and belief, Edward Morelli (hereinafter, "Morelli") is an individual who maintains a residence in the State of Florida. On information and belief, Morelli the dominant force behind the acts of North American Concerts, Corp. and/or North American Concerts, Inc. complained of herein; he owns and controls the activities of North American Concerts, Corp., profits from its operations, and entered into the agreements at issue as "North American Concerts" with no corporate designation.

6.      J&D, North American Concerts, Corp., Morelli and North American Concerts, Inc. are hereinafter collectively referred to as the "Defendants".

7.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(a).

8.    Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(a).

## BACKGROUND FACTS

9.    Pursuant to an agreement (hereinafter, the "Joint Venture Agreement") dated June 25, 2005 between "Johnnie Washington and David Underwood known as (J&D Associates, LLC) and Edward Morelli known as (North American Concerts)", the Defendants entered into a joint venture to, *inter alia*, produce a concert featuring the live performance of LaBelle on August 13, 2005 at Chene Park Outdoor Theater in Detroit, Michigan (the "Concert"). The Joint Venture Agreement was executed by Edward Morelli individually. A copy of the Joint Venture Agreement is annexed hereto as Exhibit A.

10.    Pursuant to an agreement (hereinafter, the "Venue Agreement") dated July 8, 2005 between The Right Productions, Inc., on the one hand, and North American Concerts, Inc. and J&D Associates, on the other hand, the Defendants acquired the right to use the Chene Park Amphitheater to present the Concert. The Venue Agreement was executed by David Underwood on behalf of the Defendants. A copy of the Venue Agreement is annexed hereto as Exhibit B.

11.    Pursuant to an agreement (hereinafter, the "Concert Agreement") between Pattonium and Morelli trading as a business entity named North American

3

Concerts, the Defendants engaged Pattonium to furnish the performing services of LaBelle for the Concert. A copy of the Concert Agreement is annexed hereto as Exhibit C.

    12.    Paragraph 15(A) of the Concert Agreement states as follows:

> This agreement has been entered into in the State of New York, and the validity, interpretation and legal effect of this agreement shall be governed by the laws of the State of New York applicable to contracts entered into therein. The New York courts (State and Federal) will have jurisdiction of any controversies regarding this agreement; any action or other proceeding which involves such a controversy will be brought in those courts in New York County and not elsewhere.

    13.    As consideration for the performance of LaBelle, the Defendants were obligated to pay Pattonium the sum of One Hundred Thousand ($100,000.00) United States Dollars (the "Fee"), plus roundtrip air transportation, ground transportation, hotel rooms and meals for seventeen (17) individuals.

    14.    Pursuant to paragraph 4(B) of the Concert Agreement, a deposit in the amount of Fifty Thousand ($50,000.00) United States Dollars (the "Deposit") was due by wire transfer to Pattonium's account at JP Morgan Chase Bank, New York, New York, upon the execution of the Concert Agreement. Pursuant to paragraph 4(C) of the Concert Agreement, the balance of the Fee was due to Pattonium immediately prior to LaBelle's performance, in cash or by certified check.

    15.    Paragraph 4(D) of the Concert Agreement states as follows:

> In the event that PURCHASER refuses or neglects to make the aforementioned payments, PRODUCER has the right to cause Artist not to perform in accordance with paragraph 2 without waiving any of PRODUCER'S rights herein.

4

16.    On or about June 24, 2005, Morelli requested that Pattonium agree to the payment of the Deposit in two installments: $25,000 by June 28, 2005, and $25,000 by July 13, 2005. On or about June 28, 2005, Pattonium agreed to Morelli's request.

17.    On or about July 6, 2005, the first installment of the Deposit was sent by wire transfer to Pattonium's account from "J & D Associates LLC, In care of North American Concerts".

18.    On or about July 27, 2005, Morelli sent an email to Pattonium's attorney, Jonas Herbsman of Shukat Arrow Hafer Weber & Herbsman, LLP, to advise that the Concert was cancelled due to problems with the venue.

19.    Following Morelli's email, Mr. Herbsman was contacted by Mr. Johnnie Washington of J&D, who advised that J&D was North American Concerts' partner with respect to the Concert. A copy of the Joint Venture Agreement was furnished to Mr. Herbsman as evidence of the Defendants' partnership.

20.    Mr. Washington requested the opportunity to reschedule the Concert for an alternate date at the Fox Theater in Detroit, Michigan, with the first installment of the Deposit to be applied to the new date. Despite having no obligation to do so, Pattonium agreed to Mr. Washington's request, upon the condition that J&D enter into a new agreement with Pattonium for the Fox Theater date.

21.    On or about August 15, 2005, Pattonium provided J&D with an agreement (hereinafter, the "Fox Theater Agreement") for the new date, which was required to be executed and returned to Pattonium by August 25, 2005. Under the Fox Theater Agreement, J&D was required to pay the $25,000 balance of the Deposit to Pattonium on or before August 19, 2005.

22.    J&D failed to both pay the balance of the Deposit and return an executed copy of the Fox Theater Agreement by August 25, 2005, and has failed to pay any additional amounts to Pattonium since that date. As a result, Pattonium withdrew its offer to reschedule the Concert on an alternate date.

23.    As a result of the Defendants' failure to the pay the full amount of the Deposit, and in accordance with the terms of the Concert Agreement, Pattonium was damaged in the amount of One Hundred Thousand ($100,000.00) United States Dollars, of which Twenty Five Thousand ($25,000.00) United States Dollars has previously been received from Defendants, pursuant to the Concert Agreement.

## AS AND FOR A
## FIRST CAUSE OF ACTION
### (Breach of Contract)

24.    The Plaintiff repeats and realleges each and every allegation of paragraphs "1" through "23" as if fully set forth herein.

25.    The Defendants' failure to pay the full amount of the Deposit constitutes a material breach of the Agreement.

26.    As a result of the foregoing, Pattonium has been damaged in the amount of One Hundred Thousand ($100,000.00) United States Dollars, of which

Twenty Five Thousand ($25,000.00) United States Dollars has previously been received from Defendants, plus interest, costs and attorneys' fees.

**WHEREFORE**, Plaintiff prays for relief as follows:

(a)    That Plaintiff be granted judgment against the Defendants on the First Cause of Action in the amount of One Hundred Thousand ($100,000.00) United States Dollars, of which Twenty Five Thousand ($25,000.00) United States Dollars has previously been received from Defendants;

(b)    for all costs, expenses and attorneys fees incurred herein; and

(c)    for all such other relief that the Court deems just and proper.

<u>JURY DEMAND</u>

Plaintiff demands a jury trial.

Dated: New York, New York
            August 2, 2007

SHUKAT ARROW HAFER WEBER
& HERBSMAN, LLP

By:
Dorothy M. Weber (DW 4734)
Kyle D.N. Fogden, Esq. (KF 3043)
Attorneys for the Plaintiff, Pattonium, Inc.
111 West 57th Street, Suite 1120
New York, New York 10019
(212) 245-4580

# EXHIBIT A

# J&D Associates, LLC
## And
## North American Concerts
### AGREEMENT

This Agreement is made on : JUNE 25        , 2005 between Johnnie Washington and David Underwood known as (J&D Associates, LLC) and Eddie Morelli known as (North American Concerts).  This agreement is for the production of entertainment events known as concerts.  This agreement is entered into for the purpose of co-producing the following two concerts.

1. Saturday, August 13, 2005 - Patti Labelle (Headliner) and opening act TBD at Chene Park

2. Friday, August 26, 2005 - Chaka Kahn (Headliner) and opening act TBD at Chene Park

Our agreement reads as follows:

J&D Associates, LLC will invest $50,000.00 dollars in order to receive 30% of the profits for both concert dates listed above.  J&D Associates, LLC agrees to invest the $50,000.00 dollars as follows.  An initial $35,000.00 dollar investment will be made to cover the artist deposits and concert promotions.  The $25,000.00 artist deposit is due no later than June 27, 2005 by 3:00pm.  The promotion campaign will be handled by J&D Associates, LLC with input and support from North American Concerts and their team.  J&D Associates, LLC will invest the $10,000.00 into the promotion campaign costs with any additional costs to be paid/handled by North American Concerts.  This total of $35,000.00 covers J&D Associates, LLC initial investment. The balance of $15,000.00 is due no later than July 23, 2005 to help cover costs for the second show featuring Chaka Kahn August 26,2005.  If for any reason the balance of $15,000.00 is not paid by 7/23/05, J&D Associates, LLC will forfeit their partnership in the second show, and will receive only 25% of the first show profits featuring Patti Labelle.  In this case the initial investment by J&D Associates of $35,000.00 will represent its investment in the first show featuring Patti Labelle.

North American Concerts and J&D Associates, LLC agree to the following definitions.

Profits - financial gain after all business expenses have been met.

Expenses - charges/costs incurred in order to produce the above two concerts in their entirety.  This includes the initial investments of both J&D Associates, LLC and North American Concerts, artists costs, venue costs, promotions, sponsorship commissions, sound, stage, lights, etc.

Sponsorships - a business realtionship between the concert events and another outside company that pays funds to said event for the purpose of receiving advertisement and publicity for its involvement with the events. Sponsorship commissions will be paid to seller at 20%. Suggested sponsorship levels are listed below.

Title Sponsor - $15,000.00, Presenting Sponsor - $10,000, Gold Sponsor - $5,000.00, Ambassador Sponsor - $2,500

This agreement requires that both parties be in agreement on the expenses to be incurred for the production of both shows. This will allow us to determine the breakeven and cost of show production, thus allowing for profits to be calculated. No party shall have the right to incur expenses for the costs of the show (with the exception of artist costs including riders) without the consent of the other party. This can be satisfied by both parties communicating on costs before they are incurred and getting agreement for expenses more than $ 1500.00, the radio promotion buy is an example of the type of costs requiring both parties agreement. North American Concerts will have the final decision on matters of the production of the two concert shows.

The accounting for ticket sales, sponsorship sales, and expenses require proper tracking with copies of receipts, invoices, contracts, etc. being supplied to both parties. A format for the Income Statement will be agreed upon and shared on a weekly basis leading into the final week when reporting shall be done on a daily basis. The form of communication to relay event details can be by fax, email, phone, etc.

The final settlement for each show is as follows:

Patti LaBelle - Settlement due no later than August 22, 2005 or within 24 hrs. following ticketmasters release of money to Rights Production.

Chaka Kahn - Settlement due no later than September 5, 2005 or within 24 hrs. following ticketmasters release of money to Rights Production.

The final settlement will include the initial investment by both parties and distribution of profits based on a 30%/70% split with 30% of profits for J&D Associates, LLC and 70% of profits for North American Concerts. Final settlement shall involve both parties to the extent that both parties are present and either separate checks for final settlement are cut from Right Productions to each party or one check is cut from Right Productions that require each party to sign.

In the event that either show does not happen the investments for said show shall be returned in its entirety to both parties, with the exception of costs incurred that can't be recouped. This agreement shall be binding on and inure to the benefit of the two parties identified as the agreeing parties and their heirs in case of death or incapitation of either party. This agreement is binding on both parties once signed and neither party can break the agreement without written consent from the other party. Any unlawful and unethical actions by either party that causes a negative financial impact to this agreement, said party that caused the negative impact shall hold harmless and

JUL-27-2005   17:05     DETROIT EDISON                                    P.04/04

make whole the other party.

IN WITNESS WHEREOF, the parties have executed this Agreement effective
the date first stated above.

By: _____          By: _____

   J&D Associates, LLC                      North American Concerts

Received $1,500.00 from J&D Associates
Leaving Balance of $33,500.00   Signed
X _____   6/25/05
North American Concerts

TOTAL P.04

# EXHIBIT B

# RENTAL CONTRACT

In consideration of the mutual promises and covenants herein contained, this rental contract is entered into in Detroit, Michigan as of the date and year written below by and between The Right Productions, Inc., Manager and Operator of Chene Park with offices at 2600 East Atwater, Detroit, Michigan 48207 and

**Organization:**     **North American Concerts, Inc. and J & D Associates**
                                                    **33-1093334**

**Representative(s):**  **David Underwood**

**Address:**            **34561 Fontana Drive**

**City:**               **Sterling Heights**        **State: MI**     **Zip Code: 48312**

**Telephone Number(s): 313-801-4364**

Hereinafter referred to as ("Renter"), for the purpose of setting forth the terms and conditions of the licenses of The Right Productions, Inc. as follows:

**Permitted Use**     1.     The Right Productions, Inc. grants to Renter a license to use the Chene Park Amphitheater designated in Paragraph two (2) hereof during the period set forth herein for the following events and for no other purpose:

                      2.     The time(s) at which Renter shall present such events and have the license to use the space designated below for rehearsals, events and otherwise as set forth herein are 24 hours maximum event):

| Events | Date(s) Saturday, August 13, 2005 | Times(s) 7:30 P-12:00 A | Space(s) Chene Park Amphitheater |
|---|---|---|---|

**Performing Artist**  3.     The following performing groups and no others will take part:

**Rental Fee**        4.     In consideration for the use of Chene Park, hereunder, Renter shall pay The Right Productions, Inc. at the offices of 2600 Atwater a four wall rental fee of U.S. $8,000.00.   The Basic Rental Fee which is $8,000.00, shall be received by The Right Productions at least five (5) days prior to the

1

date Renter designates The Right Productions, Inc. to print tickets but no later than fourteen (14) days before the first of the events above, which amount shall not be refundable for any reason. The Basic Rental Fee includes 4 wall 24 hr. fee. This fee does not include all other charges for wages and other expenses to be paid by Renter pursuant to this agreement.

**Security Deposit**   5.   Renter agrees to deposit with The Right Productions, Inc. $4000.00 to secure the performance date of the Renter hereunder. This deposit is non-refundable and non-transferable in the event of show cancellation. This deposit may be retained by The Right Productions, Inc. to the extent of any damage, expense, liability, or other costs of any kind incurred by The Right Productions, Inc. To the extent this deposit is not retained by The Right Productions, Inc., this deposit shall be applied to all other charges for wages and other expenses to be paid by Renter pursuant to this contract.

**Tickets/Box Office**   6.   Renter agrees to use tickets printed thru Ticket Master system or its agents at Renter's expense. Renter agrees to sell tickets through Chene Park box office beginning July 7, 2005 for a fee of $1,000.00, plus additional charges for services, as required and contained in Addendum A of this contract. Renter agrees that these additional charges shall include, but are not limited to, outlet sales, credit card usage, telephone reservations, ticket stock and printing and day of show staffing. The fee for full service as stated above shall be paid in accordance with the provisions of paragraph four (4) above. Addendum B will spell out additional charges.

**Stagehands**   7.   Renter agrees to pay at the prevailing wage rate plus 32% for fringe benefits for the number of stagehands determined in its reasonable discretion for the performance, as provided by the Renter. The cost for stagehands is included in Other Charges for Wages and Other Expenses, per Addendum B of this contract.

**Operations Fee**   8.   Renter agrees to hire The Right Productions, Inc. front of house staff which includes, but is not limited to, administration fee, medical, ushers, ticket takers, security and normal cleaning service for a fee of $6,400.00, plus any additional charges for extra services provided as agreed to by Production Manager. These extra services are contained in Other Charges for Wages and Other Expenses, per Addendum A of this contract. The Right Productions reserves the right to determine the necessary and appropriate level of security personnel pursuant to the nature and time of the Renter's production. Any changes in Security levels and at the sole discretion of The Right Productions, Inc. will be communicated to the Renter a

2

minimum 24 hours in advance of the performance, with all costs for such security assumed by the Renter. In addition, any other staff deemed necessary by The Right Productions, Inc. due to the nature of Renter's production shall be scheduled by The Right Productions at its discretion and The Right Productions, Inc. standard charges therefore shall be payable by Renter when all other charges are due.

**Insurance**     9.    Renter shall obtain at its expense public liability insurance insuring both itself and The Right Productions, Inc. and the City of Detroit, as named insured, against loss or expenses resulting from personal injury or property damage arising from the Renter's use of Chene Park. Said insurance shall provide limits of liability of not less than a combined single limit of $1,000,000. Such insurance shall be with companies and shall be in such form as may be acceptable by The Right Productions. Renter shall obtain all risk insurance for all properties brought into Chene Park by Renter and third persons under its control. The Right Productions, Inc. and Renter agree that should the Renter fail to supply The Right Productions, Inc. with confirming insurance document to The Right Productions, Inc. at least two (2) weeks prior to the first event, The Right Productions, Inc. retains the right to cancel the rental and assess the Renter for costs incurred. At its option, The Right Productions, Inc. may provide the Renter with names of insurance agents from which they can obtain the necessary coverage. However, The Right Productions, Inc. is not in any way obligated to provide insurance coverage. Insurance coverage is the sole responsibility of the Renter.

**General Conditions**   10.    The attached general conditions (and any or all attached riders/addendums initiated by The Right Productions, Inc. and Renter) are incorporated herein and constitute an integral part of this contract.

**Validation**     11.    This contract is void unless signed and received at 2600 Atwater, Detroit, MI 48207 on or before July 8, 2005. This includes any or all attached riders/addendums to this contract appropriately initiated by The Right Productions and Renter.

           12.    The Right Productions, Inc. agrees to release to promoters $60,000 cash night of the show contingent upon funds being available in the Chene Park Box Office and after expenses have been covered by Chene Park.

           13.    The Right Productions, Inc. agrees that all sponsorship monies secured by the promoters shall remain the property of the promoters.

3

14. The Right Productions, Inc. agrees to allow promoters (if necessary), to erect a 20x40 or greater tent for the purpose of a "Meet & Greet" Party.

15. The Right Productions, Inc. agrees to issue two separate checks for final settlement one in the name of North American Concerts and one in the name of J&D Associates, LLC. Promoter will notify the Right Productions, Inc. of the exact percentages prior to settlement.

Dated the _July 8_ day of _8th_____, 2005.

The Right Productions, Inc.

_____
Signature

_____
Name

_____
Title

Renter

_____
Signature

DAVID UNDERWOOD
Name

PRESIDENT
Title

Included:    Addendum A
             Addendum B - Rental Contract Fee Summary
             Addendum C - Taping Rights
             Addendum D- Payment/Ticket Release Schedule if applicable

4

# RENTAL CONTRACT ADDENDUM A

**Services** 1. The Right Productions shall provide the licensed space (s) with house lights and normal maintenance service.

**Payment** 2. Receipt by The Right Productions of the fee in full is a condition precedent to the right of the Renter to enter into Chene Park for the purposes herein contemplated. This fee is in addition to all other charges for wages and other expenses to be paid by the Renter pursuant to this agreement. Rental fee and expense settlement shall be made according to the terms of this contract unless so waived by both The Right Productions and Renter through written agreement, or unless The Right Productions in its sole discretion suspects damage to Chene Park in which case settlement shall be made by Renter on demand by The Right Productions and The Right Productions may apply the deposits and Box Office receipts (if deposit is not sufficient) for damages.

**Advance Information** 3. Renter agrees to furnish The Right Productions with detailed production and house requirements and information for Renter's use if the contract spaces no later than one month prior to the beginning of the first event.

**Rates** 4. Technical equipment and other house equipment and services reasonably requested by Renter or required by The Right Productions in its reasonable discretion will be furnished to Renter for an additional charge at rates then currently in effect.

**Time Restrictions** 5. Renter agrees that the load-in, set-up and load-out shall be at times specified by The Right Productions. In the absence of such specification, all load-ins will be immediately before the event and all load-outs shall take place immediately following the event. Should Renter fail to perform at the time (s) specified. The Right Productions may remove and store all such equipment or property at Renter's expense and risk. Renter shall also be liable for any other loss or damage sustained by The Right Productions due to Renter's failure to perform at the time (s) specified, including performances and rehearsal times.

**Renter Management** 6. An authorized representative of the Renter must be on the premises of Chene Park for the load-in, set-up, performance, and load-out for all scheduled events.

**Act Contract** 7. Renter certifies and attests that it has a valid, properly executed contract compatible with this agreement with the performers whose services form the facility. Renter will submit to The Right Productions upon demand a copy of said contract with the performers. It is the obligation of the Renter to inform the talent management of the restrictions specified in this contract.

**Use of Name** 8. The name Chene Park shall not be used as part of the title of a performance without prior written consent of The Right Productions. The Renter's name must be prominently displayed or mentioned in all print and broadcast advertising.

**Signage**  9.  No literature, signs, placards, notices, posters, banners, or flags shall be posted on the stage walls, the walls of the hall, the corridors, or the outside of the Building by Renter, nor shall any pamphlet, program, inserts, circulars, paper, magazines, announcements, souvenir, liberators, or any other printed matter or other article of any description be sold or distributed by Renter on or about the premises, without prior written consent of The Right Productions.

**Advertising**  10.  Renter agrees to discontinue or correct any advertising of the event which The Right Productions determines, in its sole discretion, to be dishonest, untruthful, damaging to the reputation of The Right Productions or Chene Park, or which does not include all dates of event and all ticket prices. All ads shall include Chene Park, 2600 Atwater, "Where the Stars Come to Shine."

**Outside Events**  11.  No advertising by Renter for events other than events in Chene Park shall be permitted in Chene Park without written permission of The Right Productions.

**Observance of Agreements**  12  Renter shall comply with terms of the agreement between The Right Productions and the A.F. of M., I.A.T.S.E. and/or any other collective bargaining agreements which may be in effect at the time of the event (s).

**Copyright**  13.  Renter shall have the obligation to obtain and pay for all appropriate BMI, ASCAP, and other similar licenses for its performances.

**Regulations**  14.  Renter shall obtain and pay for all necessary permits and licenses, if any, required for the entertainment of activity being presented, and shall not do or permit to be done anything on the premises in violation of any laws, ordinances, rules, or requirements, and if the attention of the renter is called to any such violation, the Renter shall immediately desist from or correct such violation.

**Additional Personnel**  15.  Renter may not provide any box office personnel, ushers, ticket takers, doormen, security, or any other personnel or services, all of which shall be furnished by The Right Productions.

**Park Management**  16.  The Right Productions by the granting of this contract does not relinquish the right to control and manage the Chene Park facilities and may enforce all reasonable rules for the management thereof.

**Taxes**  17.  Renter shall be responsible for payment of federal, state, or local taxes, which may be levied against the entertainment or activity being presented, or on admissions to such entertainment or activity.

**Discrimination**  18.  Renter shall not unlawfully discriminate against any person with respect to race, color, religion, national origin, sex, age, handicap, or status as Vietnam-Era or Special Disabled Veteran in accordance with applicable federal law.

**Collections**      19.   No collections or solicitations, whether for charity or otherwise, shall be allowed without prior written consent by The Right Productions. If no admission was charged to patrons, Renter shall pay The Right Productions 10% of any collection taken.

**Sublet**      20.   Renter shall not assign or sublet to others any space covered by this contract without the written consent of The Right Productions.

**Park Conditions**      21.   Renter shall not alter, repair, add to, deface, or change Chene Park in any manner whatsoever. Chene Park shall be maintained and vacated, as and when required, in as good condition as it was upon entry of Renter therein, reasonable wear and tear accepted. Renter agrees to pay on Chene Park. The Right Productions may apply the deposit and Box Office receipts, if any, (if deposit is not sufficient) for cost of damages or injury to facility.

**Capacity**      22.   Renter shall not sell or distribute or permit to be sold or distributed tickets or passes in excess of the seating capacity of contracted facilities, or admit Right Productions in its sole discretion in both instances.

**Concessions**      23.   Renter must receive the permission of The Right Productions for the sale of any merchandise or souvenir. The Right Productions shall receive a commission of 30% of any such sales. Renter shall not distribute or sell any food, beverage, or service, without the prior express written consent of The Right Productions.

**Catering**      24.   The contracting for any catering service to be done on the premises must be arranged through The Right Productions unless prior written consent is received by Renter from The Right Productions. The Right Productions shall charge a Special Event Management Fee of $1000.00 dollars for this service in addition to any rental fees charged for space(s) / security service / bartenders and all other reasonable expenses. If The Right Productions consents to allow the Renter to contract for catering service outside the provisions of the rental contract, The Right Productions will receive a commission equal to 20% of the outside catering bill.

**Alcohol**      25.   The sale of any beverage (alcoholic or nonalcoholic) must be arranged through The Right Productions at its discretion and in accordance with all laws and regulations governing the sale or dispensation of such beverages.

**Taping Rights**      26.   Neither The Right Productions nor Renter may contract for nor make arrangements for radio broadcasting television, filming photographing, taping, sound recording or other kinds of reproduction of whatever nature for any event presented by Renter under this contract without the prior written consent of both The Right Productions and Renter except that The Right Productions may use photographs of and references to Renter event for promotion of Chene Park. It is understood by Renter that such recording or broadcast may subject Renter to the payment of additional rent or fees including payments required under various labor agreements between The Right Productions and unions representing its employees. All request for such recordings must be submitted in writing to The Right Productions no later than 30 days prior to the contract event.

**Other Use Building**   27.   The Right Productions reserves the right to rent other parts of Chene Park at the same time as the rental of the designated space (s) to Renter and The Right Productions reserves the use of the lobby ,hallways ,vestibules ,Box Office, lounges and other public rooms and facilities,as The Right Productions sees fit provided that such use does not unreasonably interfere with the use of the premises by the Renter.

Renter has no rights whatsoever to enter or use the areas in the building comprising the administrative offices of The Right Productions, the mechanical rooms, Box Office, or any other areas except such as designated by The Right Productions.

**Stage Door**   28.   No person or persons shall be admitted through the stage door except performers and employees of Renter and The Right Productions. No person or persons except those directly connected with the performance, and whose business requires his presence on stage, shall be allowed thereon.

**Objectionable Persons**   29.   The Right Productions reserves the right to eject Persons from Chene Park at any time, including during a performance any person or persons in its discretion, The Right Productions determines to be objectionable, and in the event of exercise of such authority, Renter hereby waives any right and all claims for damages.

**Backstage Passes**   30.   A limited number of backstage passes shall be issued and approved by The Right Productions. Only performers will be allowed on stage during the event.

**Lost Articles**   31.   The Right Productions assumes no responsibility for articles left in the building by persons attending the event.

**Cancellations**   32.   The Right Productions may without liability refuse to perform obligations otherwise arising under this Agreement if performance of such obligations would in any way result in conflict on the part of The Right Productions or Renter with federal, state, or local laws or be objectionable or contrary to public interest all such judgements to be made by The Right Productions in it: reasonable discretion after consulting with renter.

33.   The Right Productions reserves the right to cancel this contract if it receives evidence it reasonably believes to be reliable that the artist (s) named in the contract or audiences of the named artist (s) have violated laws, caused disturbances, or have taken any action resulting injury to persons, or damage to property at any performance prior to the proposed appearance at Chene Park after consultation with renter.

34.   In the case of cancellation of any event for any reason other than set forth Paragraph 39:(a) the Renter shall have. the obligation, at its own expense, to inform the public of such cancellation through regular information media and in the event of default of such obligation, as determined by The Right Productions in its reasonable discretion, The Right Productions reserves the right to make such announcements at the cost of Renter, and (b)Renter shall reimburse any amount due ticket holders and agrees that The Right Productions shall be obligated only to reimburse any amount due ticket holders whose tickets were purchased at The Right Productions Box Office. There is a $.50 charge per ticket for all tickets refunded by The Right Productions which will be  paid by Renter  upon notifying The Right Productions of cancellation of

show.

The Right Productions retains the right to cause interruption or cancellation of the Event whenever, in the sole judgment of The Right Productions, after consultation with the renter, such interruption cancellation. is in the public interest, including, without limitation, excessive sound levels which violate Occupational Safety and Health Administration (OSHA) standards. In the event of any interruption or cancellation, Renter shall be liable for all staff costs, should additional staff be deemed necessary by The Right Productions to handle such interruption or cancellation.

**Default**     35.  All terms and conditions of this contract shall be construed as both conditions and covenants. Should Renter violate any of the terms or conditions .of this contract, The Right Productions may, in addition to any and all rights and remedies of The Right Productions under this contract or by the law provided, at The Right Productions option, and without notice or process of law, take exclusive possession of The Right Productions, remove all persons therefrom, and Renter shall have no further claim thereon or under this contract. No action taken by Renter under this contract shall be considered to be a waiver by The Right Productions of any right it may have this contract, nor shall it in any other way excuse, terminate, or impair any duty, obligation or liability owed by Renter to The Right Productions.

36.  If the Renter shall, for any reason other than those set for in Paragraph 39, fail to take possession of or to use the facilities substantially in accordance with this contract, unless otherwise agreed to in writing, The Right Productions shall retain as liquidated damages all rent paid; provided, however, that if cancellation comes with two weeks of the event date full rent shall be paid by the Renter as liquidated damages, and in addition, any disbursements or expenses incurred by The Right Productions in connection therewith shall be payable by Renter to The Right Productions.

**Unavoidable Happening**  37.  In the event that by reason of regulation of constituted authority, strike, picketing, labor disturbance, war, riot, disaster, act of God, or other event reasonably beyond the control of The Right Productions, The Right Productions is unable to provide any of the spaces, services, or personnel contemplated herein, then both The Right Productions and Renter shall be excused from further performance of this agreement and amounts deposited by Renter shall be refunded.

**Security**     38.  Notwithstanding anything to the contrary in this contract, Renter agrees that The Right Productions may at its option collect rent and any and all obligations due to The Right Productions, or any part thereof, out of the receipts, if any, from the sale of tickets or subscriptions at the Box Office of The Right Productions or elsewhere, and said receipts are hereby assigned by Renter to The Right Productions to the extent of the amount of the rent and other obligations to be paid by Renter under this contract. Renter shall be liable for the amount realized from this assignment of rents and the amount due to The Right Productions.

39.  The Right Productions is hereby given the right to take possession of any chattels or other personal property of Renter that now or hereafter may be located within said premises and to sell the same without notice, at either public or private sale, in satisfaction of all debts which may become due hereunder to The Right Productions. In the event of such sale, the proceeds shall be applied first to discharge the amount due

The Right Productions hereunder, and the balance, if any, shall be returned to Renter. Renter shall be liable for any deficiency between the amount received on such a sale, in excess of the cost of retaking, storing, and selling the goods, and the amount due The Right Productions.

**Indemnity**

40. Renter shall defend, indemnify, save, and hold harmless The Right Productions from any liability, damages, or claims or expenses which in any manner arise from or relate to the entertainment or activity being presented and all other uses by Renter, but not for the negligence or intentional torts of The Right Productions, including attorney fee, sustained or incurred by The Right Productions, and resulting from: (a) the violation or infringement of any copyright, right of privacy or other statutory or common law right of any violation of the Code of Good Practices of the National Association of Broadcasters if any performance is authorized under the contract to be broadcast by radio or television; (c) the defamation of an firm, person, or corporation; (d) any and all loss and/or by patrons; and (e) all claims, losses damages of any kind or nature arising from or in any way connected with this contract.

41. The Right Productions will exercise all reasonable care to safeguard property of the Renter while in the facility, but shall not be responsible for loss by theft fire, damage or mysterious disappearance of any property of the Renter, its agents, employees, or audience.

**Court Action**

42. If any portion of this contract shall be found invalid by any court having jurisdiction thereof, such invalidation shall not affect any other section or provision or portion of this contract. The parties agree that the provisions of this contract are to be deemed severable in the event of any judicial determination of partial invalidity.

**House Tickets**

43. The Right Productions will hold 200 tickets from each event. Tickets will be for lower bowl seating for City of Detroit personnel and to be used at the discretion of The Right Productions, Inc.

**All Inclusive**

44. This agreement contains the entire understanding of The Right Productions and Renter relating to the subject matter hereof superseding all past communications between the parties whether oral or written. Any matter not expressly provided for shall be handled and disposed of by The Right Productions in its reasonable discretion.

Such discretion may be exercised by the General Manager or Vice President of Operations of Chene Park or authorized representative.

## Addendum B
### Rental Contract Fee Summary

| Date of Event | Saturday, August 27, 2005 |
|---|---|
| Rental Fee | $8,000.00 |
| Operations Fee | |
|    Ushers | $900.00 |
|    Administrative Fee | $2,500.00 |
|    Cleaning/Main. | $1,500.00 |
|    Medical | $500.00 |
|    Marquee | $0.00 |
| Box Office Services | $1000.00 plus charges |
| Rehearsal Fee | $0.00 |
|     **Sub-totals** | $14,700.00 |
| | |
| Sound | $3,500.00 |
| Lights | $2,500.00 |
| BMI | $300.00 |
| Security (estimates) | $2,500.00 |
| Stagehands Costs (estimates) | $5,000.00 |
| Audio/Video Recording Rights | $0.00 |
| Box Afterglow Space Rental | $0.00 |
| Promotional/Caterer Sales | $TBD |
| | |
| Other Afterglow Costs (Champagne, Bartenders, Security and Maintenance O.T.) | $TBD |
| **Totals** | $28,500.00 plus charges TBD |

The signatures below indicate discussion and agreement of the Rental Contact Fee Summary outlined in the preceding table.

_____
The Right Productions, Inc. / Date

_____
           Title

_____ 7/8/05
Renter / Date

_____
           Title

5

**Addendum C**
**Audio/Video Recording Rights**

*None*

_____
The Right Productions, Inc. / Date

_____
Renter / Date     7/8/05

_____
Title

PRESIDENT
_____
Title

6

# EXHIBIT C

This Agreement dated _____, 2005 by and between PATTONIUM, INC., P.O. Box 506, Wynnewood, Pennsylvania 19096 (herein called "PRODUCER") and North American Concerts, _____ ("Purchaser").

    1.  This agreement is for the personal services of the performer professionally known as PATTI LABELLE (the "Artist") whose services shall be furnished by PRODUCER to perform services in accordance with the provisions of this agreement.

    2.  The details of the performance(s) are:

        A.  Date:       August 13, 2005

        B.  Venue:     Chene Park Outdoor Theater, Detroit, Michigan

        C.  Time:      _____ p.m.

        D.  Duration of Performance: Sixty (60) minutes.

3.  Type of Engagement:  Concert.

4.  Compensation agreed upon:

        A.    The total price is One Hundred Thousand ($100,000) Dollars plus airfare, hotel and ground transportation as set forth herein.

        B.    PRODUCER shall pay Fifty Thousand ($50,000) Dollars upon execution hereof as follows:

Bank:    JP Morgan Chase Bank
1166 Avenue of the Americas
New York, NY 10036

ABA:    021-000-021

Account:    Pattonium Inc
Account #:    020930356
c/o RZO
250 West 57th Street
New York, NY 10107

C.   The balance of the fee shall be paid in cash or by certified check prior to the performance on the date of performance.

D.   In the event that the PURCHASER refuses or neglects to make the aforementioned payments, PRODUCER has the right to cause Artist not to perform in accordance with paragraph 2 without waiving any of PRODUCER'S rights herein.

E.   In case of cancellation at PURCHASER'S request, the full fee will be due and owing to PRODUCER and any deposit shall be deemed forfeited.

## 5. RIDER

The rider attached hereto is an addendum to this agreement and an integral part of this agreement.  PURCHASER shall abide by all of the terms and conditions of the rider.

## 6. RETURN OF CONTRACT

A.   If this agreement is not signed and returned to PRODUCER within ten (10) days from receipt, PRODUCER reserves the right to declare this agreement null and void and will be free to make other arrangements on the above date(s) of performance.  If for any reason PURCHASER cannot return this agreement within this time period, it is PURCHASER'S responsibility to so inform PRODUCER immediately in writing.

B.   This agreement has been issued based on PURCHASER'S confirmation of the aforementioned Artist performance on the date and in the city noted herein.

## 7. TRANSPORTATION

A.   The PURCHASER agrees to provide, at no cost to PRODUCER in accordance with paragraph 4A above, all local ground transportation for Artist, crew and baggage from the point of arrival at airport to hotel, to local events, to venue, to point of departure from airport.  Sufficient vehicles and drivers must be provided for such transportation. Super-stretch limousine to be provided for Artist.

B.   The PURCHASER agrees to provide, at no cost to PRODUCER in accordance with paragraph 4A above, roundtrip air transportation for seventeen (17) individuals, consisting of first class tickets for Artist and one (1) additional individual and fifteen (15) coach class tickets, from and to such cities as PRODUCER shall designate.

## 8. HOTEL ACCOMODATIONS

A.     PURCHASER agrees to provide, at no cost to PRODUCER, accommodations consisting of: (i) a two (2) bedroom suite at a five (5) star hotel for Artist, (ii) a one (1) bedroom suite at the same and (iii) fifteen (15) king-bedded rooms at the Two Trees Hotel.

B.     PURCHASER shall provide meals for the Artist and entourage.

## 9. FACILITIES

A.     Artist and crew must have access to the venue on date of performance throughout the day. PRODUCER shall provide a suitable dressing room for Artist with private bathroom with shower and aseparate dressing rooms for Artist's band.

B.     PURCHASER agrees to provide a first class public address system including, but not limited to, microphones, amplifiers, monitors and loudspeaker equipment, a first class lighting system including, but not limited to, dimmers, trusses, lamps and spotlights and backline. Additionally, PURCHASER shall furnish and pay for all engineers, electricians, stagehands, spotlight operators and all other employees required for the performance hereunder and for all and any rehearsals or sound checks as required or requested by PURCHASER. PRODUCER reserves the right not to cause Artist to perform if equipment provided by PURCHASER does not meet with Artist's specifications.

C.     PURCHASER agrees to provide and pay for all house programs, security, ushers, tickets, ticket sellers, and all advertising.

## 10. PUBLICITY

A.     PRODUCER will provide PURCHASER with available publicity photographs and biographical materials promptly upon execution hereof. All materials, photos, etc., shall be subject to PRODUCER's prior written approval before use.

B.     All billing, credits and publicity shall comply with information and/or layouts provided by PRODUCER and no variations or deviations shall be permitted without written approval of PRODUCER.

C.     Subject to A above, PURCHASER may use Artist's name, approved pictures, photographs and other life-likeness in connection with the advertising and publicizing of the engagement hereunder, but such use shall not in any way imply endorsement of any company, product or service other than the PURCHASER. Said advertising and publicity rights shall terminate upon completion of this engagement.

D.  The Artist's performance may not be recorded, broadcast or exploited in any manner without the prior written approval of Artist, PRODUCER and Artist's record label. No permission is granted for any such recording, broadcast or exploitation and no guarantee is given that any such permission will subsequently be granted.

E.  PRODUCER acknowledges that PURCHASER has created a marketing and promotion plan as set forth on Exhibit A hereto. PURCHASER agree that all aspects of such marketing and promotion, to the extent involving Artist's name and/or likeness, shall be subject to the terms of this agreement. Artist shall not be obligated to provide any additional services with respect to such marketing and promotion and PURCHASER shall not obligate Artist to attend any pre-performance or post-performance events or to participate in any meet and greets, interviews or other promotions or appearances unless Artist agrees in each instance in writing prior to such event.

## 11. INSURANCE

There must be insurance covering Artist's performance, including, but not limited to, liability insurance. PURCHASER is to provide PRODUCER at least one (1) week prior to the performance with a certificate of insurance evidencing:

A.  Comprehensive general liability insurance in the amount required by the venue but in no event less than $1,000,000 combined single limit for bodily injury and property damage.

B.  Said insurance coverage shall be in full force and effect at all times PRODUCER or its agents, employees or Artist are in the confines of the venue or its property. PRODUCER'S failure to require or review the insurance certificate shall not affect PRODUCER'S rights or PURCHASER'S obligations hereunder.

C.  None of PRODUCER, its agents or employees or Artist shall be liable for damage or injury to any patrons or to the venue's property or personnel, any fixtures, or personal property, including as a result of the installation and/or operation of equipment provided by the PRODUCER except to the extent caused by the negligent acts or omissions of PRODUCER or Artist. PURCHASER shall indemnify and hold PRODUCER and Artist harmless from any third party claims concerning the foregoing and no claim, deduction or offset shall be made by PURCHASER in respect of same. PRODUCER and Artist shall indemnify and hold PURCHASER harmless from any third party claims arising from the negligent acts or omissions of PRODUCER or Artist.

## 12. CANCELLATION

A.   PRODUCER or PURCHASER reserve the right to cancel this agreement without liability in the event of an Act of God (including inclement weather causing cancellation of an outdoor event), governmental restrictions, riots, strikes, national or international emergencies, in which case the deposit, less actual expenses already incurred by PRODUCER with respect to the engagement (i.e., travel, accommodation, etc.) will be refunded.  Notwithstanding the foregoing, PRODUCER shall be paid in full provided Artist is at, or is enroute to, the engagement or otherwise ready, willing and able to perform.

B.   In the case of late arrival of Artist due to circumstances beyond the control of the Artist or PRODUCER (e.g. weather, traffic delays, airline's fault, etc.), PURCHASER must use every resource to see that the concert takes place when Artist arrives in the city of engagement.  The concert cannot be cancelled for the above reasons by PURCHASER without consent of PRODUCER.  No deductions on the contract fee can be made if the concert takes place at time other than originally scheduled.

C.   If for reasons beyond the control of the PRODUCER and other than the reasons listed in paragraphs A and B above, the Artist willfully chooses not to perform, PRODUCER'S liability is limited to the return of the fee deposited by PURCHASER.  Said deposit shall not bear interest.

## 13. MISCELLANEOUS

A.   PRODUCER will not be responsible for or pay any guild fees, music royalty charges, union dues or local taxes, and none shall be deducted from the agreed contract price.  All or any charges, fees, dues or taxes will be borne solely by the PURCHASER.

B.   Each party hereto is acting as an independent contractor and nothing herein contained shall be construed as creating a partnership, joint venture or other relationship between the parties.  PURCHASER and PRODUCER shall be responsible for payment of their own applicable federal, state and local payroll and taxes and charges.

## 14. ASSIGNMENT AND MODIFICATION

A.   The PURCHASER cannot assign or transfer this agreement without PRODUCER'S written consent.

d:/Pattonium/Chene Park                              5

B.     This agreement may not be changed, modified or altered except by an instrument in writing signed by both parties.

15. DOMICILE

A.     This agreement has been entered into in the State of New York, and the validity, interpretation and legal effect of this agreement shall be governed by the laws of the State of New York applicable to contracts entered into therein. The New York courts (State and Federal) will have jurisdiction of any controversies regarding this agreement; any action or other proceeding which involves such a controversy will be brought in those courts in New York County and not elsewhere.

B.     The invalidity or unenforceability of any provision of this agreement shall not affect the validity or enforceability of any other provision     of     this agreement.

IN WITNESS WHEREOF, the parties hereto have caused this agreement to be executed as of the date mentioned above.

PATTONIUM, INC.


By:_____


NORTH AMERICAN CONCERTS


By:_____
     Name:
     Title: